UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 18-124 (ADM/TNL)

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **DEFENDANT'S POSITION** |
| | ) | **REGARDING SENTENCING** |
| CAMERON THOMAS CROWLEY | ) | |
| | ) | |
| Defendant. | ) | |

Across the country on June 16, 2017, all eyes were on Ramsey County, Minnesota when a jury acquitted Officer Yanez of Falcon Heights in the fatal police shooting of Philando Castile. The defendant, Cameron Crowley, himself St. Paul born, was deeply moved by the racial and political injustice he perceived. For at least two years, the teenaged Mr. Crowley had been on an increasingly turbulent path. Mr. Crowley felt like an outcast among his peers. He self-medicated his persistent depression and suicidal thoughts with marijuana and other substances, resulting in numerous drug-related convictions and unwanted interventions from his parents. When the Yanez verdict came down, the embattled Mr. Crowley saw an opportunity to regain some control. Mr. Crowley has since taken responsibility and publicly apologized for his actions, admitting that hacking sensitive information on State computer databases was wrong.

Defendant Cameron Thomas Crowley is before the Court for sentencing, having pleaded guilty to Intentional Access to a Computer, in violation of 18 U.S.C. § 1030(a)(2)(C). Mr. Crowley asks this Court to adopt the parties' joint sentencing

recommendation of five years' probation. The circumstances of this case, including Mr. Crowley's strong family support, history of mental illness and addiction, and the progress that he has made since his indictment, all support a sentence of five years' probation as consistent with the sentencing goals set forth in 18 U.S.C. § 3553(a).

**ARGUMENT**

"Each year, thousands of individuals are sentenced to terms of imprisonment for violations of federal law." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018). District court sentencing judges have significant discretion to "determine in each case what constitutes a sentence that is sufficient, but not greater than necessary, to achieve the overarching sentencing purposes of retribution, deterrence, incapacitation, and rehabilitation." *Id.* (internal citations and quotations omitted). The court should "consider every convicted person as an individual and every case as a unique study in the human failings" when imposing a criminal defendant's sentence. *Gall v. United States*, 552 U.S. 38, 52 (2007) (internal citation omitted).

The starting point in the sentencing analysis is for the district court to consult the federal sentencing guidelines ("the Guidelines"). *Rosales-Mireles*, 138 S. Ct. at 1904. However, the Guidelines are advisory, and the sentencing judge is not bound by them. *Id.* "[T]he district court is prohibited from presuming that the Guidelines range is reasonable." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (citing *Gall*, 552 U.S. at 50). Instead, the court must make an individualized assessment based on the facts presented in that particular case for that particular defendant. *Id.* (citing *Gall*, 552 U.S. at 50). The

nuanced, fact-based approach to sentencing is in keeping with the long practice recognized by the Supreme Court:

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

*Koon v. United States*, 518 U.S. 81, 113, 116 S.Ct. 2035, 2053 (1996) (quoted in *Pepper*, 131 S.Ct. at 1240).

The need for an individualized sentence is particularly acute for someone like Mr. Crowley. After consideration of his long personal history of mental health and addiction, which is understandably reflected in his criminal record, Mr. Crowley urges this Court to impose a sentence of five years' probation.

## I.  THE BACKGROUND OF CAMERON CROWLEY

Cameron Crowley is the youngest of four siblings from a loving, supportive family. Mr. Crowley's adjustment in the transition from adolescence to young adulthood, however, has been difficult. The recent years have been painfully punctuated by criminal adjudications, hospitalizations, and treatment programs. Beginning with a childhood concussion, a years-long battle with mental illness and addiction has resulted in a rockier path than Mr. Crowley's parents envisioned for their bright, well-behaved, and active son. The unsustainable way in which Mr. Crowley's mental health limited his productive interactions with the world came to a head when, sensing the injustices faced by communities of color, Mr. Crowley committed the instant offense. Having been without a stable living situation for over six months, suffering from addiction and, among other

mental illnesses, Major Depressive Disorder for at least two years, a desperate and indignant Mr. Crowley did what he knew how: he programmed.

### A. Misguided Use of Extraordinary Talent

An intelligent boy, Mr. Crowley has been a self-taught computer programmer since he was eleven years old. The potential of a brilliant computer career was dimmed by persistent suicidal ideations and chemical dependency. At one point, in what turned out to be a doomed venture, Mr. Crowley left inpatient mental health and drug treatment against staff recommendations to pursue a degree in political science and computer science. This in the wake of Mr. Crowley's conduct constituting the present offense.

It is perhaps a mark of Mr. Crowley's mental illness at the time of the offense that he believed hacking and releasing sensitive personal information from a public university would avenge the death of Philando Castile. As he remarked in his public apology, "I realize that [my actions] hurt . . . people who had nothing to do with the tragic death of Philando Castile. I now realize that . . . it does not honor his memory to do things that are harmful to others in his name." PSR ¶ 22.

### B. Mr. Crowley's Struggle with Addiction and Mental Health

Although in no way does Mr. Crowley excuse or diminish his actions, individualized sentencing warrants consideration of Mr. Crowley's conduct in the context of his life. The role of mental health and addiction in Mr. Crowley's offense and his future moving forward after sentencing cannot be minimized. To wit, each of Mr. Crowley's prior adjudications was closely paired with a significant mental health event.

4

Throughout his life, at various times, Mr. Crowley has received diagnoses of Major Depressive Disorder, Conduct Disorder, Generalized Anxiety Disorder, two substance use disorders, and possible traits of Autism spectrum, personality, and antisocial disorders. Mr. Crowley has expressed feeling like an outcast throughout his life. Understandably, Mr. Crowley began attempting to numb his emotional turmoil with alcohol and other substances when he was fifteen years old.

When Mr. Crowley was seventeen years old, within the span of one summer, Mr. Crowley's friend passed away; he began using marijuana regularly as a coping mechanism; and his family was straining at the seams while his parents looked after Mr. Crowley's alcoholic sister and Mr. Crowley, a defiant, drug-abusing teen. Mr. Crowley was hospitalized for a BAC over twice the legal limit. That fall, Mr. Crowley was also first hospitalized for suicidal ideations. He attempted suicide in the hospital. Following two months of nearly-continuous stays at various mental health institutions, in March 2016, out of desperation to curb Mr. Crowley's drug use, his parents finally reported Mr. Crowley's drug use to police. He received his first criminal adjudication for drug abuse. A year later, Mr. Crowley received his second mental health hospitalization and his second drug offense. A pattern emerged, linking severe depressive episodes with drug offenses and other criminal conduct.

One self-reported retrospective source of mental anguish was an on-again, off-again relationship Mr. Crowley had during his teen years. Mental health records show that the

troublesome relationship pushed him to the edge numerous times.[1] The relationship was riddled with conflict, sometimes turning mutually violent. Finally, in July 2017, Mr. Crowley was charged with stalking and received a no-contact order. That same summer, records show that Mr. Crowley began engaging in the conduct constituting this offense. PSR ¶ 16. In August, he was hospitalized a third time. This time, he was in a dual treatment facility to address both mental health and addiction.

Mr. Crowley voluntarily ended his month-long stay to pursue his college career. He attended until October, when his mental health and addiction issues overwhelmed his ability to stay in school. Shortly thereafter, within the same month, Mr. Crowley received a no-contact order violation relating to his ongoing relationship. In late October, 2017, Mr. Crowley's parents kicked him out. Mr. Crowley subsequently suffered unstable housing until his arrest.

After dropping out of school, Mr. Crowley's criminal record, ever a glimpse into his then-existing mental state, grew. In November of 2017, Mr. Crowley received two more drug adjudications (and another one in December), violated his no-contact order, and pleaded guilty to receiving stolen property. Mr. Crowley was once more admitted to the hospital for suicidal ideations in December of 2017. By the time that Mr. Crowley gained more stability—including gainful employment—in the spring of 2018, Mr. Crowley was arrested for the instant offense.

---

[1] Mr. Crowley's mental health treatment records are in the possession of undersigned counsel and are available for review, but will not be filed with this position paper due to their sensitive nature. Mr. Crowley believes the same records were received by probation in conjunction with the preparation of his PSR.

### C. The Instant Charge and Resulting Treatment Turned Mr. Crowley's Life Around

One need look no further than mental health treatment records to see the strides Mr. Crowley has taken since his initial hospitalization and treatment intervention in the fall of 2015. The clinician described the 2015 boy whose parents dragged him to drug treatment as, "not motivated to change;" "[having] difficulty taking personal responsibility;" and "not in therapy by choice and [having a] negative pattern of thinking." The clinician identified Mr. Crowley's problems as "extreme resistance;" and "disrespect[] to parents and authority figures," among others. In fact, Mr. Crowley was so recalcitrant at one point that the clinician noted he was "minimally cooperative at assessment and may be in need of an updated screening." Counseling revealed that Mr. Crowley was not only experiencing deep depressive episodes and thoughts of self-harm, but also threatening to his parents at home.

The distinguishing feature of Mr. Crowley's 2015 Rule 25 Assessment was defiance to his parents and opposition to treatment. At that time, the assessor reported, "Client stated that his parents have been catching him using alcohol and marijuana. Client stated that he has conflicting political views than parents [sic]. Client stated he doesn't need to get help, he has no desire to stop."

Two and a half years later, in April of 2018, it was as though a different Mr. Crowley walked into the treatment facility for a second Rule 25 Assessment. He voluntarily agreed to undertake assessment as a term of probation on a state court matter. Mr. Crowley also asked for access to mental health resources, saying coping skills in previous treatment were helpful for him. He recognized that he needed help if he was to go on living. Mr. Crowley

7

reported frequent depressive and suicidal symptoms, but exhibited far less anger. In a step forward on self-care, Mr. Crowley reported a litany of mental health diagnoses, and taking medication for them as instructed. He showed awareness of his own limitations, citing personal relationships as a source of difficulty for him.

Following his arrest for the instant offense, another evaluation in July 2018 showed even greater growth. He expressed openness to any available treatment, again reiterating his need for coping skills. He recognized that he was self-medicating. Mr. Crowley evidenced even more personal reflection and awareness, noting he has felt "socially awkward" in the past. Most notably, the difference between Mr. Crowley's *demeanor* in 2015 and 2018 is like night and day: Mr. Crowley "appeared cooperative throughout session. . . . [Mr. Crowley] appear[ed] amenable to treatment and able to participate in his own care." Mr. Crowley had hope for the future, for the first time in a long time.

By all accounts, Mr. Crowley's time in the halfway house from June 13, 2018 to March 7, 2019 was an immense success. Mr. Crowley complied with all Court-ordered conditions of release, completed mental health and chemical health treatments, tested negative for illegal substances, and obtained and maintained gainful employment. PSR ¶ 4. After completing months of intensive outpatient treatment at the halfway house, this Court granted Mr. Crowley's Motion to Modify Conditions. He now lives with his older sister, with whom he has always had a close relationship. Mr. Crowley cites the high stakes here and greater structure in the federal regime as one reason for his progress. Another important factor, though, is that Mr. Crowley was simply so young, enduring the throes of adolescence, when he committed the instant offense. Even today, Mr. Crowley has years

8

of brain development[2] and opportunity for progress ahead of him. The Mr. Crowley who committed the instant offense is not the same Mr. Crowley who stands before the Court for sentencing. At the young age of 20, having undergone a year of treatment, recovery, maturity, and self-reflection, Mr. Crowley's progress is deserving of recognition and leniency from the Court.

**II.     UNDER THE § 3553(a) FACTORS, THIS COURT SHOULD ADOPT THE JOINT SENTENCING RECOMMENDATION.**

In addition to consulting the applicable advisory Guidelines, the sentencing judge "must always take account of certain statutory factors" codified in 18 U.S.C. § 3553(a). *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1963 (2018). After considering the starting point from the Guidelines, "the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49–50.

> Generally, the factors to be considered in imposing a sentence are:
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>    (A) to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes by the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

---

[2] Sara B. Johnson et al., *Adolescent Maturity and the Brain: The Promise and Pitfalls of Neuroscience Research in Adolescent Health Policy*, 45 J. ADOLESCENT HEALTH 216, 216 (2009).

9

18 U.S.C. § 3553(a). The parties agree on the provisions of the PSR, with a total offense level of 17 and a criminal history category of III, resulting in a guideline range of 30–37 months. The parties also agree the statutory maximum sentence is one year of imprisonment. However, given the below factors, the parties jointly recommend a sentence of 5 years' probation.

### A. The Nature and Circumstances of the Offense and the Characteristics of Mr. Crowley

On June 5, 2017, Minnesota State colleges became aware that an anonymous actor, later identified as Mr. Crowley, posted private information of its students and employees online. PSR ¶ 8. On June 18 (two days after Officer Yanez was acquitted), Mr. Crowley tweeted a URL to the posting. *Id.* ¶ 9. Web logs were able to trace five attacks between May 13 and June 6 to Mr. Crowley's residence. *Id.* ¶ 11.

On June 16 and 17, Mr. Crowley also accessed sensitive information on another State of Minnesota server. *Id.* ¶ 12. Between June 17 and 22, Mr. Crowley continued to tweet about the college and State hacks. *Id.* ¶ 13. He declared retaliation for Officer Yanez's acquittal. *Id.*

Law enforcement seized and examined Mr. Crowley's computer and cell phone pursuant to a search warrant on September 14, 2017. *Id.* ¶ 15. The search warrant revealed information obtained from the hacks on Mr. Crowley's computer. *Id.* On June 4, 2018, Mr. Crowley was arrested and detained. *Id.*, at F.1. On June 13, he was released on bond to a halfway house. *Id.* ¶ 4. Since then, Mr. Crowley has complied with the terms of his release, gotten sober, and gained employment. During the investigation and apprehension, Mr.

Crowley never denied his actions or evaded the authorities. In fact, Mr. Crowley has taken responsibility for his actions in a public statement of apology.

It is all but impossible to view the nature and circumstances of the offense separately from the context of Mr. Crowley's personal characteristics and circumstances. The present offense was the culmination of years of angst and rebellion, an outlet for the mental illness that had been raging in Mr. Crowley's developing brain. Mr. Crowley did not commit the present offense in a vacuum; rather, he committed it during an agonizing summer marked by serious mental illness and addiction, resulting in poor judgment all around.

When Mr. Crowley began hacking, Mr. Crowley was still using marijuana and other substances for self-medication. He was also still living at home with his parents. Treatment records have clearly identified Mr. Crowley's conflicts with his parents—particularly regarding his substance use—as a significant source of stress. This is evidenced by Mr. Crowley's second drug offense, just two months prior to the beginning of the hacking, when his mother provided authorities with information about his drug use.

Shortly after the offense, Mr. Crowley continued to spar with his on-again, off-again girlfriend, landing him another criminal charge for violation of the no-contact order. Mr. Crowley cited the tumult as a cause of depression for him. Since then, Mr. Crowley has recognized that he was in an unhealthy relationship. He has learned he needs to find other sources of happiness.

Finally, Mr. Crowley was hospitalized yet again that summer. Mr. Crowley underwent dual treatment for mental health and addiction, but left early to pursue a college career in political science and computer science. Perhaps he recognized his own potential,

11

and sought to pursue his passions in a legitimate forum. Unfortunately, mental health and substance abuse limited Mr. Crowley's potential in school. Eventually, the gravity of Mr. Crowley's actions during the summer of 2017 caught up with him, resulting in the instant case.

**B. The Seriousness of the Offense, Deterrence, Public Protection, and Rehabilitation**

In this case, a lengthy probationary term in lieu of a prison sentence does not undermine the seriousness of the offense, nor respect for the law. After a long road with several criminal adjudications, Mr. Crowley himself has finally expressed realization of the gravity of his actions as he stands before the Federal Court. Mr. Crowley's time in the halfway house and the ability to see the far-reaching effects of his actions have impressed upon him the gravity of his conduct. Mr. Crowley has correspondingly expressed regret for committing the present offense.

Mr. Crowley cites the high stakes here and the heightened expectations for federal supervision as a deterrent from continuing his prior conduct. Not only has he expressed regret, but his actions themselves evidence such a change. In addition to pretrial detention and supervision, a five-year probation sentence has already begun to render its intended deterrent effect, as demonstrated by Mr. Crowley's success in the halfway house.

In addition to deterring future criminal conduct, probation supervision will serve to protect the public. In fact, Mr. Crowley expressed concern for the public good as a motivating reason for the instant offense. With more guidance, structure, and treatment

underway, Mr. Crowley will be able to channel his empathy to a more productive use of his time.

Finally, a sentence of probation allows Mr. Crowley to continue his treatment and rehabilitation. Mr. Crowley is more likely to continue his upward progress in the supportive presence of his family rather than in prison. As someone who has experienced a great deal of personal change in the last four years, Mr. Crowley has unlimited potential to continue growing. The opportunities for him in the real world in a structured probation program, as opposed to prison, will ultimately benefit both Mr. Crowley and society at large.

## CONCLUSION

For the foregoing reasons, Mr. Crowley respectfully asks this Court to adopt the parties' joint sentencing recommendation of five years' probation.

Dated: June 13, 2019.

                                            Respectfully submitted,

                                            *s/ Douglas L. Micko*
                                            DOUGLAS L. MICKO
                                            Attorney ID No. 299364
                                            Attorney for Defendant
                                            107 U.S. Courthouse
                                            300 South Fourth Street
                                            Minneapolis, MN  55415

                                            Katie Scott
                                            Third Year Student,
                                            University of Minnesota Law School